UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANCE KNIFFIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., SANJAY MEHROTRA, AND DAVID A. ZINSNER,<br><br>Defendants. | Civil Action No. _____<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>Jury Trial Demanded |

Plaintiff Vance Kniffin ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant Micron Technology, Inc. ("Micron Technology" or the "Company") common stock between June 22, 2018 and November 19, 2018, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2. Micron Technology purports to be in the business of "innovative memory and storage solutions."

3.      During the Class Period, and unbeknownst to investors, Micron Technology misled investors by failing to disclose to investors that it was engaged in a price-fixing conspiracy with Samsung Electronics and SK Hynix, and such unlawful behavior could lead to severe sanctions against Micron, in China and elsewhere. Instead, Micron Technology repeatedly referred to Samsung Electronics and SK Hynix as competitors who could have "cost advantages."

4.      On May 15, 2018, the Chinese State Administration for Market Regulation ("SAMR") notified Micron that it was investigating potential collusion and other anticompetitive conduct by DRAM suppliers in China. On May 31, 2018, SAMR made unannounced visits to Micron Technology offices in Beijing, Shanghai, and Shenzhen to investigate these claims.

5.      It was not until October 15, 2018, that Micron revealed the SAMR investigation, by way of its Form 10-K filing for the period ended August 30, 2018. This disclosure was not full and complete, however, as it did not reveal that there was "massive evidence" of Micron Technology's anti-competitive behavior.

6.      On November 19, 2018, the Financial Times reported that investigators in China had "found 'massive evidence' of anti-competitive behaviour" by Micron Technology and that Samsung Electronics and SK Hynix had engaged in a price-fixing conspiracy with Micron Technology.

## JURISDICTION AND VENUE

7.      The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b). Micron Technology stock trades on the NASDAQ, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

11. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NASDAQ, a national securities exchange.

## PARTIES

12. Plaintiff Vance Kniffin is an individual residing in Port Charlotte, Florida. Plaintiff acquired and held shares of the Company at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

13. Defendant Micron Technology, Inc. was incorporated pursuant to the laws of Delaware and maintains its principal executive offices in Idaho. The Company's stock trades on the NASDAQ under the ticker symbol "MU".

14. Defendant Sanjay Mehrotra ("Mehrotra") has been the President and Chief Executive Officer of Micron Technology since May 8, 2017.

15. Defendant David A. Zinsner ("Zinsner") has been the Senior Vice President and Chief Financial Officer of Micron Technology since February 19, 2018.

16. Collectively, Menhrotra and Zinsner are referred to throughout this complaint as the "Individual Defendants".

17. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

18. The Class Period begins on June 22, 2018, when Micron Technology filed its Form 10-Q for the period ended May 31, 2018, which stated in pertinent part:

> On April 27, 2018, a purported class-action lawsuit was filed against Micron and other DRAM suppliers in the U.S. District Court for the Northern District of California asserting claims based on alleged price-fixing of DRAM products during the period from June 1, 2016 to February 1, 2018. Similar cases were subsequently filed in Canadian courts in Quebec, Montreal and Toronto, Ontario. The complaints seek treble monetary damages, costs, interest, attorneys' fees, and other injunctive and equitable relief. We are unable to predict the outcome of these matters and therefore cannot estimate the range of possible loss. The final resolution of these matters could result in significant liability and could have a material adverse effect on our business, results of operations, or financial condition.

…

**We face intense competition in the semiconductor memory and storage markets from a number of companies, including Intel; Samsung Electronics Co., Ltd.; SK Hynix Inc.; Toshiba Memory Corporation; and Western Digital Corporation**. Some of our competitors are large corporations or conglomerates that may have greater resources to invest in technology, capitalize on growth opportunities, and withstand downturns in the semiconductor markets in which we compete. Consolidation of industry competitors could put us at a competitive disadvantage. In addition, some governments have provided, and may continue to provide, significant assistance, financial or otherwise, to some of our competitors or to new entrants and may intervene in support of national industries and/or competitors. In particular, we face the threat of increasing competition as a result of significant investment in the semiconductor industry by the Chinese government and various state-owned or affiliated entities that is intended to advance China's stated national policy objectives. The activities by the Chinese government may restrict us from participating in the China market or may prevent us from competing effectively with Chinese companies.

Our competitors generally seek to increase silicon capacity, improve yields, and reduce die size in their product designs which may result in significant increases in worldwide supply and downward pressure on prices. Increases in worldwide supply of semiconductor memory and storage also result from fabrication capacity expansions, either by way of new facilities, increased capacity utilization, or reallocation of other semiconductor production to semiconductor memory and storage production. Our competitors may increase capital expenditures resulting in future increases in worldwide supply. We and some of our competitors have plans to ramp, or are constructing or ramping, production at new fabrication facilities. Increases in worldwide supply of semiconductor memory and storage, if not accompanied by commensurate increases in demand, would lead to further declines in average selling prices for our products and would materially adversely affect our business, results of operations, or financial condition. **If competitors are more successful at developing or implementing new product or process technology, their products could have cost or performance advantages.**

[Emphasis Added]

19.     Micron Technology's Form 10-Q for the period ended May 31, 2018, was not full and complete, however, as it did not reveal that Micron Technology had been engaged in anti-competitive behavior, and that there was "massive evidence" of Micron Technology's anti-competitive behavior.

20. On October 15, 2018, Micron Technology filed its Form 10-Q for the period ended August 30, 2018, which stated in pertinent part:

> **We face intense competition in the semiconductor memory and storage markets from a number of companies, including** Intel; **Samsung Electronics Co., Ltd.; SK Hynix Inc.**; Toshiba Memory Corporation; and Western Digital Corporation. Some of our competitors are large corporations or conglomerates that may have greater resources to invest in technology, capitalize on growth opportunities, and withstand downturns in the semiconductor markets in which we compete. Consolidation of industry competitors could put us at a competitive disadvantage. In addition, some governments have provided, and may continue to provide, significant assistance, financial or otherwise, to some of our competitors or to new entrants and may intervene in support of national industries and/or competitors. In particular, we face the threat of increasing competition as a result of significant investment in the semiconductor industry by the Chinese government and various state-owned or affiliated entities that is intended to advance China's stated national policy objectives. In addition, the Chinese government may restrict us from participating in the China market or may prevent us from competing effectively with Chinese companies.
>
> Our competitors generally seek to increase silicon capacity, improve yields, and reduce die size in their product designs which may result in significant increases in worldwide supply and downward pressure on prices. Increases in worldwide supply of semiconductor memory and storage also result from fabrication capacity expansions, either by way of new facilities, increased capacity utilization, or reallocation of other semiconductor production to semiconductor memory and storage production. Our competitors may increase capital expenditures resulting in future increases in worldwide supply. We and some of our competitors have plans to ramp, or are constructing or ramping, production at new fabrication facilities. Increases in worldwide supply of semiconductor memory and storage, if not accompanied by commensurate increases in demand, would lead to further declines in average selling prices for our products and would materially adversely affect our business, results of operations, or financial condition. If competitors are more successful at developing or implementing new product or process technology, their products could have cost or performance advantages.
>
> The competitive nature of our industry could have a material adverse effect on our business, results of operations, or financial condition.
>
> …

> On April 27, 2018, a purported class-action lawsuit was filed against Micron and other DRAM suppliers in the U.S. District Court for the Northern District of California asserting claims based on alleged price-fixing of DRAM products during the period from June 1, 2016 to February 1, 2018. Similar cases were subsequently filed in federal court in the United States, as well as in Canadian courts in Quebec, Montreal and Toronto, Ontario. The complaints seek treble monetary damages, costs, interest, attorneys' fees, and other injunctive and equitable relief. We are unable to predict the outcome of these matters and therefore cannot estimate the range of possible loss. The final resolution of these matters could result in significant liability and could have a material adverse effect on our business, results of operations, or financial condition.
>
> On May 15, 2018, the Chinese State Administration for Market Regulation ("SAMR") notified Micron that it was investigating potential collusion among DRAM suppliers in China. On May 31, 2018, SAMR made unannounced visits to our sales offices in Beijing, Shanghai, and Shenzhen to seek certain information as part of its investigation. We are cooperating with SAMR in its investigation.

[Emphasis Added]

21.     Micron Technology's Form 10-Q for the period ended August 30, 2018, was not full and complete, however, as it did not reveal that Micron Technology had been engaged in anti-competitive behavior, and that there was "massive evidence" of Micron Technology's anti-competitive behavior.

22.     Each of statements identified above were materially false and misleading when issued.

23.     Pursuant to the Sarbanes-Oxley Act of 2002, the Individual Defendants signed certifications with each of the Forms 10-Q described above attesting that they reviewed each of the Form 10-Qs prior to filing, that they did not contain untrue statements, that they fairly represented the financial condition of the company, and that the company's internal controls are effective.

24.     Micron Technology and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the

Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Micron Technology, their control over, and/or receipt and/or modification of Micron Technology's allegedly materially misleading statements and/or their associations with the Company that made them privy to confidential proprietary information concerning Micron Technology, participated in the fraudulent scheme alleged herein.

25.  The truth was revealed on November 18, 2018, when the Financial Times published an article while Micron Technology had revealed the investigation, albeit belatedly, that the Company had failed to disclose that it had actually engaged in anti-competitive behavior that the Chinese Government had found "massive evidence of." The Financial Times article stated in pertinent part:

> Chinese investigators said they found "massive evidence" of anti-competitive behaviour by the world's top three makers of computer memory chips, in a probe that could exacerbate global trade tensions.
>
> …
>
> "The anti-monopoly investigation into these three companies has made important progress . . . [It] has yielded massive evidence," said Wu Zhenguo, head of China's anti-monopoly bureau under the State Administration for Market Regulation.
>
> …
>
> The three companies control as much as 95 per cent of the global market for dynamic random-access memory (DRAM) chips, which are widely used in computers and smartphones.

> After steadily falling for most of the past three decades, the price-per-bit of DRAM chips rose 47 per cent in 2017, according to the US research firm IC Insights, and has continued to increase this year.
>
> The Chinese investigation follows a class-action lawsuit in the US, lodged in April, which alleges that the three companies conspired to inflate DRAM prices. The companies are contesting the case.
>
> …
>
> In 2005, Samsung and Hynix paid out $300m and $185m to settle price-fixing charges from the US Justice department. The two companies, and seven others, were hit with fines totalling €331m from the EU commission in 2010 for price fixing between 1998 and 2002.
>
> …
>
> Kim Young-woo, an analyst at SK Securities, said Beijing could impose fines of more than $2.5bn on each of the three chipmakers in the worst-case scenario if they are found to have fixed prices.
>
> "This would create additional pressure to cut DRAM prices and build more wafer factories as joint ventures with local Chinese companies to spur the transfer of technology to China," he said.

26.     Following publication of this article, Micron Technology's stock price fell drastically, from $39.44 at close on Friday, November 16, 2018 to $36.83 at close on Monday, November 19, 2018, a drop of more than 7%.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Micron Technology common stock between June 22, 2018, and November 18, 2018, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

28.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to

the parties and the Court. More than 1,117,877,657 Micron Technology shares trade on the NASDAQ.

29. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

　　a. Whether the Exchange Act was violated by Defendants;

　　b. Whether Defendants omitted and/or misrepresented material facts;

　　c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

　　d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

　　e. Whether the price of the Company's stock was artificially inflated; and

　　f. The extent of damage sustained by Class members and the appropriate measure of damages.

30. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

31. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

33.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

   a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   b. The omissions and misrepresentations were material;

   c. The Company's common stock traded in efficient markets;

   d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

   e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

34.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

35.    The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

36.    On November 19, 2018, following the publication of the Financial Times article, Micron Technology's shares fell from $39.44 at close on Friday, November 16, 2018 to $36.83 at close on Monday, November 19, 2018, a drop of more than 7%.

## CAUSES OF ACTION

### Count I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

37.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

38.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.    Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii)

engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

40. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**Count II**
**Violation of § 20(a) of the Exchange Act**
**(Against The Individual Defendants)**

41. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and

a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: January 23, 2019

Respectfully submitted,

**FINKELSTEIN BLANKINSHIP**
**FREI-PEARSON & GARBER LLP**
Greg Blankinship
445 Hamilton Ave, Suite 605
White Plains, NY 10601
Tel: 914-298-3281
Fax: 914-824-1561
Gblankinship@fbfglaw.com

*Local Counsel for Plaintiff*

Additional Counsel:

**BLOCK & LEVITON LLP**
Jeffrey C. Block, jeff@blockesq.com

Jacob A. Walker, jake@blockesq.com (*pro hac vice* motion to be filed)
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax