**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiffs and Class

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANCE KNIFFIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., SANJAY MEHROTRA, AND DAVID A. ZINSNER,<br><br>Defendants. | **CASE No.: 1:19-cv-00678-WHP**<br><br>**OPPOSITION OF JAMES FERRARO AND FERRARO FAMILY FOUNDATION INC. TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br><u>**CLASS ACTION**</u> |
| KJELL ROJVALL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., SANJAY MEHROTRA, ERNEST E. MADDOCK, and DAVID A. ZINSNER,<br><br>Defendants. | **CASE No.: 1:19-cv-00990-WHP**<br><br><u>**CLASS ACTION**</u> |

DAVIN M. POKOIK, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

MICRON TECHNOLOGY, INC., SANJAY MEHROTRA, ERNEST E. MADDOCK, and DAVID A. ZINSNER,

        Defendants.

**CASE No.: 1:19-cv-02136-WHP**

**CLASS ACTION**

Before the Court are six competing motions[1] for appointment as lead plaintiff. While four movants claim larger "financial losses" than James Ferraro and The Ferraro Family Foundation (collectively "Ferraro"), none of these four movants have the requisite *largest financial interest* (15 U.S.C. § 78u-4(a)(3)(B)(iii)), as these movants have exaggerated their losses by including financial losses from sales that occurred prior to the lone corrective disclosure in this case on November 19, 2018. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Such "in and out" losses must be excluded. It follows that, given that all three related actions allege only a single corrective disclosure at the end of the Class Period, the most relevant metric in assessing the largest financial interest is net shares purchased and net funds expended since only shares purchased and held through the lone corrective disclosure, here November 19, 2018, are compensable.

---

[1] On April 3, 2019 movant Bharat Chandak filed a notice of non-opposition acknowledging that he did not have the largest financial interest. Dkt. No. 47. On April 5, 2019 the Micron Investor Group (Pomerantz LLP) filed a notice of non-opposition. Dkt. No. 48. Similarly, on April 8, 2019, the Seafarers Funds filed a response stating that they did not have the largest financial interest. Dkt. No. 49.

Additionally, two of the competing movants that claim larger losses than Ferraro are inappropriate groups of unrelated investors, Micron Investor Group-Levi & Korsinsky LLP ("MIG-Levi Group") and Novriyanto Lius and Thomas Fish ("Lius Group"). While courts are divided on the issue of whether unrelated investors are permitted to aggregate their losses, the recent trend is to reject unrelated groups. *See, e.g.*, *Jakobsen v. Aphria Inc. et al.*, No 1:18-CV-11376-GBD, slip op. at 3-7 (S.D.N.Y. Mar. 27, 2019) (rejecting group that failed to show pre-existing relationship, barely allege any involvement in the litigation thus far, had vague and conclusory plans for cooperation, and were silent on whether they were formed as a group independent of counsel); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (refusing to aggregate losses of lead plaintiff groups because they each failed to satisfy the adequacy requirement).

In contrast to the competing movants, Ferraro is not an unrelated group, retained the most shares, 167,500, expended the most net funds, $7,347,504.45, and lost over $1.3 million and thus has the largest financial interest and should be appointed Lead Plaintiff and his selection of counsel should be approved.

## A. FERRARO HAS THE LARGEST FINANCIAL INTEREST

Below is table of the competing movants' claimed losses and net shares or retained shares:

| Movant(s) | Shares Retained | Asserted Loss |
|---|---|---|
| James Ferraro /Ferraro Family Foundation Inc. | 167,500 | $1,326,702.72 |
| Dhiru Z. Patel, Cetin Kayaer, Alex Vintu | *Shares retained*: 103,400, 33,000, 0 Total: 136,400 <br><br> Alex Vintu also | $510,242, $840,421.15, $3,005,382.81 $4,356,045.96 |

| | retained 914 Jan 18, 2019 $65 call options | |
|---|---|---|
| Rhode Island Office of the General Treasurer on behalf of the Employees Retirement System of Rhode Island | With FIFO, 129,898, with LIFO, 103,898 | $1,656,660.09 FIFO, $1,231,383.09 LIFO |
| Novriyanto Lius, Thomas Fish | 0 <u>100,000</u> Total: 100,000 | $2,775,939.21, <u>$2,416,078.35</u> $5,192,017.56 |
| Frank Mobassery | 97,420 | $277,513.45 |
| Dr. Earle Thornhill | Account 1: 4,751 Account 2: 795 Account 3: 84 <u>Account 4: 0</u> Total: 5,630 | $1,353,295.28 |

<u>In and out losses should not be considered</u>:  At any stage of a securities fraud class action, Courts do not credit losses from purchases and sales of securities prior to either a partially or fully corrective disclosure.  "In and out" traders are those who both purchase and sell their shares during the class period.  Where both the purchase and sale are made prior to any corrective disclosure, *i.e.*, before the end of the class period, such traders may well have no damages–even if the trades result in a loss–because the Supreme Court requires that to be recoverable as damages, the losses must result from the fraud.  Proof of causation is typically accomplished by identifying a corrective disclosure of the fraud that causes the stock to drop.  *Dura*, 544 U.S. at 342. (holding that securities plaintiff must allege and prove a causal connection between the alleged fraudulent statement or conduct and plaintiff's economic loss).[2]

---

[2] "When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed

Although *Dura* involved pleading standards for alleging loss causation, its reasoning applies to motions for appointment as lead plaintiff. *See, e.g.*, *Maliarov v. Eros Int'l PLC,* 2016 WL 1367246, at \*2 (S.D.N.Y. Apr. 5, 2016) (applying *Dura* to exclude in and out transactions); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015) (same); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (same). Hence, when calculating a proposed lead plaintiff's estimated loss, the court "should not include losses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public." *Topping*, 95 F.Supp.3d at 617 (internal quotations omitted); *see Khunt*, 102 F.Supp.3d at 531 ("If a lead plaintiff movant cannot recover a given loss in the action he seeks to lead, the loss cannot logically contribute to his financial stake in that action."); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at \*4 (E.D.N.Y. Mar. 2, 2007), *adhered to on reconsideration*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017).

Here, several movants included such in-and-out transactions in their asserted losses. Lius-Fish Group bought 272,000 shares during the Class Period and only retained 100,000 shares past the lone corrective disclosure. MIG-Levi Group bought 1,005,819 shares during the Class Period, but only retained 136,400 shares and 914 call options past the corrective disclosure. Dr. Earle Thornhille purchased 327,618 shares during the Class Period and retained 5,630 shares past the corrective disclosure. Given the large proportion of purchases and sales prior to the corrective disclosure, these movants' have materially inflated their losses.

---

investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura,* 544 U.S. 336, 343.

Court should look to net shares purchased for assessing financial interest: In a one corrective disclosure case such as this one,[3] net shares purchased or retained shares after the lone corrective disclosure is the most accurate indicator of financial interest. As discussed above, if courts are not to credit losses from shares sold prior to a corrective disclosure, it follows that the only class period purchases here that are compensable are those shares bought during the class period and either retained past the corrective disclosure or sold thereafter for a loss. Thus, courts have looked to net shares or retained shares in deciding largest financial interest. *Mulligan v. Impax Labs., Inc.*, 2013 WL 3354420, at *5 (N.D. Cal. July 2, 2013) (looking to number of shares purchased during and retained as of last day of class period); *Schueneman v. Arena Pharmaceuticals, Inc.*, 2011 WL 3475380, at *4 (S.D. Cal. Aug. 8, 2011) (adopting retained shares method of calculating financial interest and appointing movant with $30,000 less in losses than competing movant because that movant retained 300,000 additional shares); *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006) (stating that courts typically equate "largest financial interest" with the amount of potential recovery).[4]

Here, Ferraro has the most net shares purchased and the "most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Therefore, Ferraro has the largest financial interest and should be appointed Lead Plaintiff.

### B. THE UNRELATED GROUPS SHOULD BE REJECTED

---

[3] In a case with multiple corrective disclosures during the class period, net shares purchased or retained shares have less utility, since shares sold during the class period after a partial corrective disclosure is compensable. Therefore, in that situation, looking only at the net shares purchased or retained shares at the end of the class period may understate compensable losses.

[4] Indeed, in allocating settlement funds to class members, settlement plans of allocation often do not compensate in and out purchasers. *See, e.g.*, *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *8 (C.D. Cal. May 6, 2014); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *8 (D. Conn. Aug. 20, 2012).

Courts are divided on the issue of whether unrelated groups such as MIG-Levi and Lius-Fish Group can aggregate their losses.   However, the recent trend is to reject such groups. *Jakobsen,* No. 1:18-CV-11376-GBD, slip op. at 3-7 (S.D.N.Y. Mar. 27, 2019); *Takata*, 2018 WL 5801379, at \*5; *see also Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.,* 2015 WL 7018024, at \*2–3 (S.D.N.Y. Nov. 12, 2015) (rejecting group that failed to provide evidence that their grouping was not the product of lawyer-driven litigation); *Khunt*, 102 F. Supp. 3d at 533 (rejecting lead plaintiff group with that was "plainly a creation of counsel"); *Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at \*5 (S.D.N.Y. July 23, 2014) (rejecting group that could not show it was not "cobbled together" for the purpose of achieving lead plaintiff designation); *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) (rejecting a group because, among other reasons, it that made no showing of any pre-existing relationship and submitted joint declaration with only conclusory assurances) (Pauley, J.); *In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 308 (S.D.N.Y.2001) (rejecting proposed group because it was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff").   Given this recent trend, the Court should do the same and reject MIG –Levi and Lius-Fish Group.

## CONCLUSION

For the foregoing reasons, the Court should grant Ferraro's motion and deny the competing motions.

Dated: April 8, 2019                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim

7

Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiffs and Class

8

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim