UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

| | | |
|---|---|---|
| VANCE KNIFFIN, *individually and on behalf of all others similarly situated*, | : | |
| | : | |
| Plaintiff, | : | 19cv678 |
| | : | |
| -against- | : | |
| | : | |
| MICRON TECHNOLOGY, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

---------------------------------

| | | |
|---|---|---|
| KJELL ROJVALL, *individually and on behalf of all others similarly situated*, | : | |
| | : | |
| Plaintiff, | : | 19cv990 |
| | : | |
| -against- | : | |
| | : | |
| MICRON TECHNOLOGY, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

---------------------------------

| | | |
|---|---|---|
| DAVIN M. POKOIK, *individually and on behalf of all others similarly situated*, | : | |
| | : | |
| Plaintiff, | : | 19cv2136 |
| | : | |
| -against- | : | MEMORANDUM & ORDER |
| | : | |
| MICRON TECHNOLOGY, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

---------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

Various plaintiffs in three federal securities class actions against Micron Technology, Inc. ("Micron") and its officers (the "Individual Defendants") move to consolidate

the actions and for appointment as lead plaintiff and lead counsel under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Following publication of the required notice, nine separate parties filed motions. Three presumptive plaintiffs remain: (1) Novriyanto Lius and Thomas Fish (the "Lius/Fish Group"), represented by Glancy Prongay & Murray LLP; (2) Dhiru Patel, Cetin Kayaer, and Alexandru Vintu (the "Micron Investor Group"), represented by Levi & Korsinsky, LLP; and (3) James Ferraro and the Ferraro Family Foundation, Inc. (the "Ferraro Group"), represented by the Rosen Law Firm. For the reasons that follow, the actions are consolidated, Thomas Fish is appointed lead plaintiff, and Glancy Prongay & Murray LLP is appointed lead counsel.

I.  Consolidation

"Under the PSLRA, a court must decide whether to consolidate related actions prior to selecting a lead plaintiff." Phuong Ho v. NQ Mobile, Inc., 2014 WL 1389636, at *1 (S.D.N.Y. Apr. 9, 2014) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)). All movants endorse consolidation. The complaints make identical claims arising from the same alleged pattern of conduct—namely, that Micron and the Individual Defendants made false and misleading statements by failing to disclose that they were engaged in a price-fixing conspiracy with competitors. Minor differences in defendants and class periods "do not render consolidation inappropriate [where] the cases present sufficient common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." Kaplan v. Gelfond, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). Accordingly, these actions are consolidated.

II. Appointment of Lead Plaintiff

   A. Legal Standard

"The PSLRA requires courts to 'appoint the most adequate plaintiff as lead

plaintiff for the consolidated actions' as soon as practicable after consolidation." Lu v. Jumei Int'l Holding Ltd., 2015 WL 4104570, at *1 (S.D.N.Y. June 22, 2015) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)).  "The PSLRA creates a rebuttable presumption that the lead plaintiff should be the plaintiff who (a) has either filed a complaint or moved for lead plaintiff status; (b) has the largest financial interest in the relief sought; and (c) otherwise satisfies the typicality and adequacy requirements of [Federal Rule of Civil Procedure 23]."  Phuong Ho, 2014 WL 1389636, at *1 (citation omitted).

> B.  Disaggregation of the Unrelated Investor Groups

The PSLRA provides that a "group of persons" may be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "The majority of courts, including those in this District, . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class."  Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).  However, a court must consider one "overarching concern"—"whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers."  Nakamura v. BRF S.A., 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) (citation and quotation marks omitted).

> Accordingly, a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs.  Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

Phuong Ho, 2014 WL 1389636, at *4 (citation and quotation marks omitted).

Here, the Lius/Fish and Micron Investor Groups are both comprised of unrelated

investors.  Their declarations do not persuade this Court that they will be able to function cohesively.  Neither group's members have a preexisting relationship, and while this factor is not dispositive, "courts have typically required that plaintiffs lacking such a relationship present a more compelling showing."  Elstein v. Net1 UEPS Techs., Inc., 2014 WL 3687277, at *2 (S.D.N.Y. July 23, 2014).  Vague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation.  See Jakobsen v. Aphria, Inc., 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019) (collecting cases); see also Int'l Union of Operating Eng'rs v. FXCM Inc., 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015).  Moreover, their boilerplate plans for cooperation "[are] conclusory assurances [and] do not satisfy this Court that [they] will be able to effectively manage this litigation."  Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp., 275 F.R.D. 187, 191–92  (S.D.N.Y. 2011).  The individual members' investing experience and sophistication merit little weight if the groups nevertheless appear to be "lawyer-created . . . in the hope of thereby becoming the biggest loser."  Khunt v. Alibaba Grp. Holding Ltd., 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015).  Finally, both groups are silent on whether they chose counsel or vice versa.  Taking these factors together, there is "nothing to indicate that the overall quality of the action will be improved by [these groupings]," Elstein, 2014 WL 3687277, at *5, and so the Lius/Fish and Micron Investor Groups are disaggregated.

    C. Greatest Financial Interest

To determine which movant has the greatest financial interest and is therefore afforded the rebuttable presumption under the PSLRA, courts in this district consider the Lax/Olsten factors: "(1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended during the class period, and (4) the plaintiff's approximate

losses." Khunt, 102 F. Supp. 3d at 530.  The fourth factor—approximate losses—is the most important.  Hansen v. Ferrellgas Partners, L.P., 2017 WL 281742, at *2 n.3 (S.D.N.Y. Jan. 19, 2017) (citation omitted); see also Khunt, 102 F. Supp. 3d at 530; In re Fuwie Films Sec. Litig., 247 F.R.D. 432, 437 (S.D.N.Y. 2008) ("This Court, like many others, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant." (citation and quotation marks omitted)).

The Lius/Fish and Micron Investor Groups provide the following calculations (the "Calculations"), as reflected in the following chart:

| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended on Shares | LIFO Losses | Adjusted LIFO Losses |
|---|---|---|---|---|---|
| ~~Lius/Fish Grp.~~ | ~~273,450~~ | ~~100,000~~ | ~~$6,435,547~~ | ~~$5,192,018~~ | ~~$2,455,528~~ |
| Lius | 173,450 | 0 | $424,875 | $2,775,939 | $39,450 |
| Fish | 100,000 | 100,000 | $6,010,671 | $2,416,078 | $2,416,078 |
| ~~Micron Investor Grp.~~ | ~~1,035,519~~ | ~~136,400~~ | ~~$8,637,341~~ | ~~$4,356,046~~ | ~~$2,219,724~~ |
| Patel | 1,002,319 | 103,400 | $6,645,922 | $3,005,383 | $911,484 |
| Kayaer | 33,000 | 33,000 | $1,991,880 | $840,421 | $805,692 |
| Vintu | 200 | 0 | $(460.00) | $510,242 | $502,548 |
| **Ferraro** | 167,500 | 167,500 | $7,347,504 | $1,326,806 | $1,326,806 |

(See Ferraro Grp.'s Memo. (ECF No. 17), Ex. 3; Korsinsky Decl. (ECF No. 30), Ex. B; Portnoy Decl. (ECF No. 34), Ex. C.)

All parties adopt the "last in, first out" ("LIFO") method in calculating their losses, consistent with the "overwhelming trend in this district and nationwide."  Bo Young Cha v. Kinross Gold Corp., 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (collecting cases). Under this formula, "the last purchases made during the class period [are matched up] with the first sales made during the class period" to offset any gains attained from artificially inflated stock prices during the class period.  In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005).  However, the recent trend in this district is for movants to adjust their LIFO calculations

to remove any losses arising from securities that were bought and sold before a defendant's corrective disclosure.  See, e.g., Sallustro v. CannaVest Corp., 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases); In re LightInTheBox Holding Co., Sec. Litig., 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013).  This modification recognizes that "[after] Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005) . . . any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."  Khunt, 102 F. Supp. 3d at 531 (citation and quotation marks omitted) (alterations in original).

        The Lius/Fish and Ferraro Groups both adjusted their LIFO losses, but the Micron Investor Group did not.  During oral argument, the Micron Investor Group contended only that it did not believe this adjustment was "necessary."  (April 23, 2018 Oral Arg. Tr., at 12:3.)  But aside from its general unwillingness to employ this methodology, the Micron Investor Group offers no reason why this Court should depart from the growing consensus among judges in this district that Dura-adjusted LIFO losses are the appropriate metric.  See, e.g., Maliarov v. Eros Int'l PLC, 2016 WL 1367246, at *2 (S.D.N.Y. Apr. 5, 2016).

        Further complicating matters, the Ferraro Group disputes some of the Calculations.  Specifically, the Ferraro Group takes issue with the Lius/Fish Group's assertion that in adjusting its losses, it excluded both losses and gains on securities bought and sold prior to the corrective disclosure.  The Ferraro Group contends that exclusion of gains is improper and as a result, the Lius/Fish Group's reported losses are artificially inflated.  The Lius/Fish Group argues that the Ferraro Group has no legal authority justifying a distinction between losses and gains and that including gains would have a distorting effect.  However, the Lius/Fish Group also does not point to any authorities endorsing its approach.

6

Ultimately, the Court need not resolve this debate. Neither the Ferraro Group nor Fish's losses individually are affected by Dura adjustments, as neither party sold any shares during the class period, and therefore harvested no pre-disclosure gains or losses. (See Ferraro Grp.'s Memo., Ex. 3; Portnoy Decl., Ex. C.) And the Ferraro Group conceded during oral argument that Fish has the highest individual losses. (Apr. 23, 2019 Oral Arg. Tr., at 7:8–14.)

The Ferraro Group also encourages this Court to evaluate the parties' financial interests not by approximate losses, but rather by net shares purchased. However, the Ferraro Group endorsed the approximate losses approach in its opening brief and cites no precedent in this circuit endorsing a departure from the customary focus on approximate losses. And in any event, the difference of 67,500 net shares between Fish and the Ferraro Group is outweighed by the disparity in their losses—at nearly $2.5 million, Fish's losses are almost double those of the Ferraro Group. And judges in this district ultimately accord more weight to approximate losses in comparable circumstances. See, e.g., Foley v. Transocean, Ltd., 272 F.R.D. 126, 131 (S.D.N.Y. 2011) (reasoning that "net shares purchased . . . does not seem terribly relevant . . . since all of [movant's] sales occurred after . . . corrective disclosures" and finding a movant's smaller amount of net shares purchased not "significant enough to outweigh the fact that it sustained appreciably greater losses").

Finally, the Ferraro Group contends that if this Court disaggregates the investor groups, it should not permit Fish to serve as individual lead plaintiff. This argument ignores the longstanding practice in this district of considering the largest shareholder of a rejected group "as if he had moved to be appointed as lead plaintiff alone." Varghese, 589 F. Supp. 2d at 394; see also Pipefitters, 275 F.R.D. at 192; Repex Ventures v. Madoff, 2009 WL 10697939, at *6 (S.D.N.Y. Oct. 5, 2009). And though the Ferraro Group contends that there is an increasing

7

trend of rejecting such individual plaintiffs, it notably fails to point to any decision from this district embracing that viewpoint.[1] Accordingly, this Court concludes that Fish has the greatest financial interest.

D.  Rule 23 Requirements

A lead plaintiff movant must also make a "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule 23]." Baydale v. Am. Express Co., 2009 WL 2603140, at *2 (S.D.N.Y. Aug. 14, 2009) (citation and quotation marks omitted).  At this stage, a movant satisfies the typicality requirement where it has "suffered the same injuries as the other class members as a result of the same conduct by defendants and has claims based on the same legal issues." Pipefitters, 275 F.R.D. at 190 (citing In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  In evaluating a movant's adequacy, a court must consider: "(1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation." Pipefitters, 275 F.R.D. at 190 (citing In re Glob. Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004)).  "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of unique defenses." Baydale, 2009 WL 2603140, at *2 (citation and quotations marks omitted).

This Court is satisfied with Fish's preliminary showing that his claims are typical and adequate.  (See Portnoy Decl., Ex. C.)  With nearly $2.5 million in losses, he clearly "has a

---

[1]  Jakobsen, the only case from this district that the Ferraro Group cites, did not reach this issue, as the court concluded that "[t]here are no separate motions to appoint any member of the [investor group] as lead plaintiff on an individual basis . . . [so] this Court does not consider whether each individual member of the [group] could be appointed as lead plaintiff." Jakobsen, 2019 WL 1522598, at *4 n.3 (emphasis added).  The instant motion is distinguishable because the Lius/Fish Group expressly requested that this Court appoint Fish individually if the group was disaggregated.

sufficient interest in the outcome of the case to ensure vigorous adequacy." City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc., 269 F.R.D. 291, 296 (S.D.N.Y. 2010). The other movants offer no proof that he cannot serve as lead plaintiff. Seidel v. Noah Educ. Holdings Ltd., 2009 WL 700782, at *4 (S.D.N.Y. Mar. 9, 2009). And the fact that Fish only purchased common stock, and not any other Micron securities, does not bar him from serving as lead plaintiff on behalf of a class composed of those who bought securities generally. Irving Firemen's Relief & Ret. Fund v. Tesco PLC, 2015 WL 1345931, at *5 (S.D.N.Y. Mar. 19, 2015). Accordingly, this Court appoints Thomas Fish as lead plaintiff.

III.     Appointment of Lead Counsel

Fish's counsel, Glancy Prongay & Murray LLP, is competent and experienced. Accordingly, this Court grants Glancy Prongay & Murray LLP's motion to be appointed lead counsel.

## CONCLUSION

For the foregoing reasons, Thomas Fish is appointed lead plaintiff, and Glancy, Prongay & Murray LLP is appointed lead counsel. These actions are consolidated under the caption, "In re Micron Technology, Inc. Securities Litigation, No. 19 Civ. 678." Lead counsel is directed to file an amended consolidated complaint by June 14, 2019. Any application for a pre-motion conference addressed to the pleading should be filed by July 10, 2019. All other motions to be appointed lead plaintiff and lead counsel are denied, and the Clerk of Court is directed to terminate all pending motions.

Dated: April 30, 2019
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

9